```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

BETTY IVIE GOLDBLATT and
ENVIRONMENTAL NUTRITION, INC.,

                    Plaintiffs,                    06 Civ. 3208 (RWS)

    - against -                                    O P I N I O N

ENGLANDER COMMUNICATIONS, L.L.C.,

                    Defendant.

------------------------------------------X
```

A P P E A R A N C E S:

    LAW OFFICES OF CHRISTOPHER SERBAGI
    Attorneys for Plaintiffs
    488 Madison Avenue, Suite 1120
    New York, NY 10022
    By: CHRISTOPHER SERBAGI, ESQ.
        Of Counsel

    WOLF, BLOCK, SCHORR and SOLIS-COHEN LLP
    Attorneys for Defendant
    250 Park Avenue
    New York, NY 10177
    By: MARTIN G. RASKIN, ESQ.
        Of Counsel

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/16/06

**Sweet, D.J.,**

Plaintiffs Betty Ivie Goldblatt ("Goldblatt") and Environmental Nutrition, Inc., ("EN") (collectively, "Plaintiffs") have moved by order to show cause for a preliminary injunction pursuant to Rule 65, Fed. R. Civ. P., ordering specific performance by defendant Englander Communications, L.L.C. ("Englander") of certain promises allegedly made by Englander regarding an ongoing trademark application, which promises Goldblatt relied upon to her detriment. Plaintiffs also request a declaratory judgment as to the meaning of several clauses of the December 10, 2004 Asset Purchase and Sale Agreement between EN and Englander (the "Agreement"), and request that such judgment order the Defendants to allow Plaintiffs to prosecute the trademark application at issue. For the reasons set forth below, Plaintiffs' motion is denied.

## Prior Proceedings

On April 26, 2006, Plaintiffs filed a complaint against Englander in the Southern District of New York, alleging three separate causes of action: (1) breach of the Agreement, (2) promissory estoppel, and (3) breach of the implied covenant of good faith and fair dealing.

On the same day, Plaintiffs also moved by order to show cause for specific performance of promises allegedly made on January 5, January 31, and February 14, 2006; a declaratory judgment as to the meaning of several clauses of the Agreement; and a temporary restraining order and preliminary injunction enjoining Englander from taking any actions inconsistent with promises allegedly made. The temporary restraining order being denied, a hearing was set down for May 3, 2006, on which date the motion was marked fully submitted.

**The Parties**

Goldblatt, a citizen of the state of New York, is the creator of the nutritional newsletter Environmental Nutrition (the "Newsletter"), and the founder and President of EN. In 1977, Goldblatt created the trademark "Environmental Nutrition" (the "Mark"), which was used in connection with the sale of the Newsletter, and was formerly owned by EN.

EN is a corporation organized and existing under the laws of the state of New York, with its principal place of business at 52 Riverside Drive, Suite 15-A, New York, New York 10024. EN is the former owner of the Mark.

Englander, a Connecticut limited liability company, is the publisher of over thirty newsletters and magazines on topics including, inter alia, human wellness, cooking, pet care, boating, and aviation. It and its affiliates have been in continuous operation for over three decades. After execution of the Agreement, Englander changed its name to Belvoir Media Group, L.L.C. References herein to Englander include Belvoir Media Group, L.L.C.

**Facts**

By the Agreement dated December 10, 2004, Englander purchased from EN all rights to the Mark, the Newsletter, EN's website, EN's book business, and all assets related thereto. Prior to the execution of the Agreement, Englander discovered that EN's registration of the Mark had been cancelled on July 20, 2002, for failure to file a required declaration of continued use. The Agreement provided that Englander would, at its own expense, file an application to register the Mark and use its best efforts to prosecute the application. The Agreement also provided that if Englander succeeded in obtaining registration for the Mark, it would pay EN an additional $150,000.

On or about December 28, 2004, Englander filed an application with the U.S. Patent and Trademark Office ("PTO") to register the Mark. On or about August 1, 2005, the PTO issued an Official Action refusing registration on the basis that the Mark

3

was "merely descriptive" under Section 2(e)(1) of the Lanham Act. On or about November 7, 2005, Englander submitted a response to the Office Action, arguing that the Mark was not descriptive, but only suggestive, of the subject matter.

On November 29, 2005, the PTO issued a Final Office Action, maintaining its refusal to register the Mark on the basis that the Mark was merely descriptive. Pursuant to 15 U.S.C. § 1062(b) and 37 C.F.R. § 2.65(a), Englander was given six months -- until May 29, 2006 -- to respond before its application would be considered abandoned.

By letter of December 15, 2005, Englander informed Goldblatt of the Final Office Action and advised her that Englander intended to file another response seeking registration. The letter also indicated that Englander believed submission of such response would satisfy its obligation under the Agreement to use its best efforts to prosecute the application.

Goldblatt retained her own trademark counsel, Christopher Serbagi ("Serbagi"), to review the PTO's Office Actions and Englander's submissions. Serbagi concluded that Englander's submissions to the PTO were deficient because they did not attempt to distinguish any of the references the PTO Examiner cited as evidence that the Mark was distinctive, nor did they include any argument that the Mark was entitled to a presumption of distinc-

4

tiveness under Section 2(f) of the Lanham Act based on use for over five years.

In a series of subsequent telephone calls and letters to Englander, Goldblatt and Serbagi suggested that the response to the Final Office Action should include a claim under Section 2(f). Goldblatt and Serbagi also requested that Serbagi be allowed to draft and submit the response to the PTO.

Englander's Chief Operating Officer, Philip Penny ("Penny"), responded to Goldblatt and Serbagi by letter dated January 5, 2006:

> [P]lease send to our trademark counsel . . . a draft of any arguments that you believe have not been previously made and ought to be made, or that have been made and you believe can be made more persuasively, and we will direct our trademark counsel to receive and consider it. . . . We will also direct our trademark counsel to send you a draft of our next submittal before it is finalized, and to receive and consider your further suggested changes and suggested additions.

Def. Ex. 23. Serbagi subsequently began to draft a response to the Final Office Action.

By letter dated January 31, 2006, Penny wrote:

5

> As you are aware, the $150,000 portion of the Purchase Price referenced in Section 2.01(c) [of the Agreement] is not required to be paid at this time, by reason of the fact that the Trademark Action[1] has not occurred. Per the request of your trademark attorney, Christopher Serbagi, our trademark attorneys, Steinberg & Raskin, are awaiting Mr. Serbagi's draft of the next submittal to the trademark examiner.

Serbagi Aff. ¶ 20.

By letter dated February 14, 2006, Penny further stated:

> As you have previously requested, I have already asked Steinberg & Raskin to entirely stop work on the next trademark submittal until they receive your draft. And as you have previously requested, I have already instructed Steinberg & Raskin to incorporate the arguments you wish to advance into the next submittal unless Steinberg & Raskin believe your arguments to be unprofessional or affirmatively detrimental to the application. The only timely matter right now is for you to send your draft submittal to Steinberg & Raskin, and to then do your level best to work together, in a constructive fashion, to finalize a submittal that both you and they find satisfactory.

Def. Ex. 30.

---

[1] The "Trademark Action Date," as defined in the Agreement, occurs when either "the USPTO takes final action either issuing a trademark registration or denying the application, or until [Englander's trademark counsel] recommends that [Englander] withdraw or abandon the application for the reason that the application cannot reasonably be expected to be successfully prosecuted . . . ." Agreement, § 7.13.

6

Goldblatt and Serbagi continued to work on a draft response to the PTO Final Office Action. As part of their efforts, Serbagi requested that Englander give Goldblatt permission to contact various individuals (some of whom are current or former customers of EN) for the purpose of taking affidavits to support the response to the PTO. By letter dated March 7, 2006, Martin Raskin ("Raskin")[2] stated:

> [I]t is reasonable to conclude from the various accusations made by you that if the application is refused after submission of the next response, regardless of the extent of your participation in the preparation of that response, you and Ms. Goldblatt intend to hold Englander responsible. . . . Therefore, in response to your recent inquiries, Englander will not be responding to the questions posed in your recent e-mails.

Def. Ex. 31, at 1-2.

On March 15, 2006, Serbagi sent Raskin a draft response to the Final Office Action, and again requested permission to contact potential affiants in support of the application. In response, Englander asked Goldblatt to sign a general release of claims against Englander. Although discussions continued into April, the parties could not resolve their disputes, and Plaintiffs filed their complaint on April 26, 2006.

---

[2] The letter of March 7, 2006 indicated that Steinberg & Raskin had merged with Wolf, Block, Schorr and Solis-Cohen, and that both Raskin and Divino were now with WolfBlock.

7

**Discussion**

Plaintiffs have moved for a preliminary injunction ordering Defendant to allow Plaintiffs to (1) complete and submit the next response to the PTO, (2) make all decisions concerning future prosecution of the Mark, (3) obtain affidavits in support of the response from any individual that they deem necessary, and (4) handle any appeal of future PTO actions. Plaintiffs also ask that Defendant be enjoined from taking any actions inconsistent with its alleged promises to allow Plaintiffs to draft and submit a response to the PTO Final Office Action.

A preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948, at 129-130 (2d ed. 1995)). A party moving for a preliminary injunction in the Second Circuit must demonstrate (1) a showing of irreparable injury and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and the balance of hardships tipping in favor of the movant. Blum v. Schlegel, 18 F.3d 1005, 1010 (2d Cir. 1994); Laureyssens v. Idea Group, Inc., 964 F.2d 131, 135-36 (2d Cir. 1992); SEC v. Unifund SAL, 910 F.2d 1028, 1038 n.7 (2d Cir. 1990).

8

The showing of irreparable harm is "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction." Citibank, N.A. v. Citytrust, 756 F.2d 273, 275 (2d Cir. 1985). An irreparable injury is one that cannot be redressed through a monetary award. Reuters v. United Press Int'l, 903 F.2d 904, 907 (2d Cir. 1990) (holding that to be considered "irreparable," an injury must "be one incapable of being fully remedied by monetary damages"). Where monetary damages are adequate compensation, a preliminary injunction will not issue. JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990). Monetary loss will not suffice unless the movant shows damage that cannot be rectified by financial compensation. Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989). The law in this circuit requires a showing that irreparable damages are likely, not merely possible. JSG Trading Corp., 917 F.2d at 79; Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979).

Here, Plaintiffs have not met their burden of demonstrating irreparable harm, because any injury they may suffer as a result of Defendant's actions is fully compensable by monetary damages. The Agreement provided that Defendant would use its best efforts to obtain trademark registration for the Mark, and if successful, would pay EN an additional $150,000. In the event that Defendant is not successful in obtaining registration for the Mark, and that Plaintiffs prevail on the merits of the claims alleged in the complaint, Plaintiffs will be able to recover any amount due

9

under the contract as monetary damages. Absent any showing of additional harm that cannot be remedied by monetary damages, Plaintiffs' motion for a preliminary injunction must be denied.

**Conclusion**

For the foregoing reasons, Plaintiffs' motion by order to show cause for a preliminary injunction is denied.

It is so ordered.

New York, NY
May  16 , 2006

ROBERT W. SWEET
U.S.D.J.