UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

BETTY IVIE GOLDBLATT and
ENVIRONMENTAL NUTRITION, INC.,

                    Plaintiffs,

                                          06 Civ. 3208 (RWS)
     - against -

                                          O P I N I O N
ENGLANDER COMMUNICATIONS, L.L.C.,

                    Defendant.

------------------------------------------X

A P P E A R A N C E S :

     LAW OFFICES OF CHRISTOPHER SERBAGI
     Attorneys for Plaintiffs
     488 Madison Avenue, Suite 1120
     New York, NY 10022
     By:  CHRISTOPHER SERBAGI, ESQ.
          Of Counsel

     WOLF, BLOCK, SCHORR and SOLIS-COHEN LLP
     Attorneys for Defendant
     250 Park Avenue
     New York, NY 10177
     By:  MARTIN G. RASKIN, ESQ.
          Of Counsel



**Sweet, D.J.,**

Plaintiffs and Counterclaim Defendants Betty Ivie Goldblatt ("Goldblatt") and Environmental Nutrition, Inc. ("ENI") (collectively, the "Plaintiffs") have moved to dismiss the counterclaims contained in the Defendant's First Amended Answer to Complaint, Counterclaims and Jury Demand ("FAA") of Defendant Englander Communications, L.L.C. ("Englander") and for sanctions pursuant to 28 U.S.C. § 1927 and Rule 11, Fed. R. Civ. P. For the reasons set forth below, the motion to dismiss is granted in part and denied in part, and the motions for sanctions are denied.

## Prior Proceedings

On December 10, 2004, the parties signed an Asset Purchase and Sale Agreement (the "Agreement"), through which Englander acquired the assets of ENI. Following the execution of the Agreement, the parties disputed their respective post-transaction duties. On April 26, 2006, the Plaintiffs initiated this action seeking specific performance of the Agreement, a temporary restraint and a preliminary injunction. The preliminary relief was denied by the opinion of this Court dated May 16, 2006 (the "May 16 Opinion"), familiarity with which is assumed.

That same day, Englander filed the Answer to Complaint, Counterclaims and Jury Demand (the "Answer"). Plaintiffs filed a

1

motion to dismiss the counterclaims and for sanctions on May 30, 2006.

Englander filed the FAA on June 8, 2006, alleging counterclaims of breach of contract and breach of the implied obligation of good faith. Plaintiffs subsequently withdrew their initial motion to dismiss and filed the instant motion to dismiss the counterclaims and for sanctions pursuant to 28 U.S.C. § 1927 on June 16, 2006. The notice of motion does not specify the rule under which it is made, and the memorandum in support refers to both Rule 12(b)(6) and Rule 56, Fed. R. Civ. P. Since no appropriate statement of material undisputed facts has been submitted, the instant motion will be deemed made pursuant to Rule 12(b)6. The motion was marked fully submitted on July 12, 2006.

On July 11, 2006, Plaintiffs filed an additional motion for sanctions pursuant to Rule 11, Fed. R. Civ. P. The Rule 11 motion was marked fully submitted on August 9, 2006.

**The Facts**

All well-pleaded allegations are accepted as true for the purposes of this motion only. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). In addition to the allegations contained in the Complaint, the court may refer "to documents attached to the complaint as an exhibit or incorporated in it by

2

reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993); see also Cortec Indus., Inc. v. Sum Holding L.P. , 949 F.2d 42, 47-48 (2d Cir. 1991). Consideration of documents subject to judicial notice does not necessarily convert a motion to dismiss into a motion for summary judgment. See Graal Enterp., Ltd. v. Desourdy Int'l 1949 Inc., No. 95 Civ. 0752 (LMM), 1996 WL 353003, at *3 (S.D.N.Y. June 26, 1996) (court may consider pleadings and "facts that are capable of accurate and ready determination") (internal quotation marks omitted). Rule 201 of the Federal Rules of Evidence generally permits a court to take judicial notice of any facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The facts as set forth below do not constitute findings of the Court.

## The Parties

Goldblatt, a resident of the state of New York, is the creator of the nutritional newsletter Environmental Nutrition (the "Newsletter"), and the founder and President of ENI. In 1977, Goldblatt created the trademark "Environmental Nutrition" (the "Mark"), which was used in connection with the sale of the Newsletter, and was formerly owned by ENI.

3

ENI is a corporation organized and existing under the laws of the state of New York, and is the former owner of the Mark and former publisher of the Newsletter.

Englander, a Connecticut limited liability company with a place of business in Norwalk, Connecticut, is the publisher of over thirty newsletters and magazines on topics including, inter alia, human wellness, cooking, pet care, boating and aviation. After acquiring the assets of ENI, Englander changed its name to Belvoir Media Group, L.L.C. References herein to Englander include Belvoir Media Group, L.L.C.

## The Transaction

Pursuant to the Agreement, Englander purchased from ENI all rights to the Mark, the Newsletter, ENI's website, ENI's book business, and all assets related thereto in exchange for the payment of $500,000 at the closing and an additional $50,000 on February 1, 2006, and the assumption of deferred subscription liability in excess of $630,000. Prior to the execution of the Agreement, it was discovered that ENI's registration of the Mark had been cancelled on July 20, 2002, for failure to file a required declaration of continued use. The Agreement provided that Englander would file an application to register the Mark with the U.S. Patent and Trademark Office ("PTO") and use its best efforts to prosecute the application. The Agreement also provided that if

4

Englander succeeded in obtaining registration for the Mark, it would pay ENI an additional $150,000, less any fees and expenses of prosecuting the trademark application.   ENI agreed to fully cooperate with the filing and prosecution of the application.

On or about December 28, 2004, through its attorneys Steinberg & Raskin P.C., Englander filed an application to register the Mark with the PTO. On August 1, 2005, the PTO issued an Office Action refusing registration of the Mark as being "merely descriptive" under section 2(e)(1) of the Lanham Act, and citing other references to the term "environmental nutrition." Steinberg & Raskin prepared and filed a response to the Official Action, arguing that the title was not merely descriptive but only suggestive of the subject matter, and noting ENI's prior registration of the Mark. Steinberg & Raskin decided not to submit a claim of acquired distinctiveness under section 2(f) of the Lanham Act at that time, because the claim could be asserted at a later point in the proceedings and because there was a substantial issue as to whether a claim of acquired distinctiveness could be proved.

On November 29, 2005, the PTO issued a Final Office Action maintaining the refusal to register under section 2(e)(1). By letter of December 15, 2005, Englander notified Goldblatt of the Action and advised that it would prepare and file another response in order to obtain registration.  The letter also advised Goldblatt

5

that Englander believed its submission of the second response to
the PTO would satisfy its obligation under section 7.13 of the
Agreement.

Beginning on December 22, 2005, an extended
correspondence ensued between Christopher Serbagi ("Serbagi"),
counsel for Goldblatt and ENI; several attorneys at Steinberg &
Raskin; and Philip Penny ("Penny"), Vice President of Englander.
Serbagi stressed that, in his opinion, a claim of acquired
distinctiveness under section 2(f) of the Lanham Act should have
been made in response to the PTO's first refusal and should be made
in response to the Final Office Action. Serbagi suggested that
attorneys at Steinberg & Raskin were not prosecuting the
application effectively, and requested that he be permitted to
draft the response to the Final Office Action, noting that this
would avoid any dispute whether Englander had used its best efforts
to prosecute the application. Penny responded that he would direct
Steinberg & Raskin to consider any arguments that Serbagi felt
ought to be made, but "did not agree . . . to have [Serbagi]
represent Englander . . . in this process." (FAA ¶ 38, at 19.) On
March 15, 2006, Serbagi forwarded to Englander and Steinberg &
Raskin a draft response to the Final Office Action.

The parties and their counsel were unable to resolve a
number of disagreements regarding such issues as Englander's
obligation to appeal an unfavorable ruling from the PTO, the extent

6

of its promise to advance arguments proposed by Serbagi, and whether Goldblatt should sign a release. The relationship between the parties and their counsel became increasingly contentious, and on April 26, 2006, the Plaintiffs filed this action seeking specific performance of the Agreement, a temporary restraint and a preliminary injunction. As previously noted, the preliminary relief was denied by the May 16 Opinion.

On July 6, 2006, the PTO approved the Mark for publication. The Mark was published for opposition on August 29, 2006, and registered on November 14, 2006.

## The Rule 12(b)(6) Standard

A motion to dismiss pursuant to Rule 12 must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). For the purposes of a Rule 12 motion, all well-pleaded allegations are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).

"The issue is not whether a [claimant] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56

7

F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer, 416 U.S. at 236).
In other words, "`the office of a motion to dismiss is merely to
assess the legal feasibility of the complaint, not to assay the
weight of the evidence which might be offered in support thereof.'"
Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,
375 F.3d 168, 176 (2d Cir. 2004) (quoting Geisler v. Petrocelli,
616 F.2d 636, 639 (2d Cir. 1980)).  Dismissal is only appropriate
when "it appears beyond doubt that the [claimant] can prove no set
of facts which would entitle him or her to relief."    Sweet v.
Sheahan, 235 F.3d 80, 83 (2d Cir. 2000); accord Eternity Global
Master Fund, 375 F.3d at 176-77.


## The Breach of Contract Counterclaim May Go Forward


"To prevail on a breach of contract claim under New York
law, a plaintiff must prove the following elements:  `(1) a
contract; (2) performance of the contract by one party; (3) breach
by the other party; and (4) damages.'"   Terwilliger, 206 F.3d at
245-46 (quoting First Investors Corp. v. Liberty Mut. Ins. Co., 152
F.3d 162, 168 (2d Cir. 1998)).


Plaintiffs have contended that Englander has failed to
adequately allege any breach of the Agreement.  Pursuant to the
Agreement, ENI promised to "fully cooperate with [Englander] in
connection with the filing and prosecution of the application, in
any manner reasonably requested . . . ."   (Agreement, § 7.13.)

8

Englander has alleged that ENI breached the Agreement by filing the instant action asking the Court to turn over prosecution of the Mark to Plaintiffs.  As the Court should only grant a motion to dismiss pursuant to Rule 12(b)(6) when "it appears beyond doubt that the [claimant] can prove no set of facts which would entitle him or her to relief," Sweet, 235 F.3d at 83, the Court finds that breach has been adequately pled.

ENI and Goldblatt also have challenged the Counterclaims for failing to allege damages adequately (Pls.' Mem. Supp. at 11-13), arguing the facts of Goldblatt's actions.  In its opposition, Englander concedes that the exact nature of its damages is uncertain (Def.'s Mem. Opp. at 14), but notes that it has stated a cause of action notwithstanding, citing McCoy Assocs. v. Nulux, Inc., 218 F. Supp. 2d 286, 294 (E.D.N.Y. 2002) ("That McCoy Associate's damages are uncertain, or may not even exist, is an insufficient reason to deny McCoy Associate's summary judgment motion").  As a result of ENI's complaint, Englander maintains it is entitled at the least to nominal damages.  The availability of nominal damages is well-recognized in New York courts.  Argonaut P'ship v. Bankers Tr. Co., No. 96 Civ. 1970 (MBM), No. 96 Civ. 2222 (MBM), 1997 U.S. Dist. LEXIS 1092, at *13-*14 (S.D.N.Y. 1997) ("[S]ince nominal damages are always available in breach of contract actions, all of the elements necessary to maintain a lawsuit and obtain relief in court [are] present at the time of the alleged breach." (quoting Ely-Cruikshank Co. v. Bank of Montreal,

9

81 N.Y.2d 399, 402 (N.Y. 1993))); Freund v. Washington Square Press, Inc., 34 N.Y.2d 379, 384 (N.Y. 1974) ("Though these are damages in name only and not at all compensatory, they are nevertheless awarded as a formal vindication of plaintiff's legal right to compensation which has not been given a sufficiently certain monetary valuation."); Finley v. Atlantic Transp. Co., 220 N.Y. 249, 258 (N.Y. 1917) ("Whenever there is a breach of contract or the invasion of a legal right, the law infers some damage."); Hirsch Elec. Co. v. Cmty. Servs., Inc., 536 N.Y.S.2d 141, 143 (N.Y. App. Div. 1988) ("It is a well-settled tenet of contract law that even if the breach of contract caused no loss or if the amount of loss cannot be proved with sufficient certainty, the injured party is entitled to recover as nominal damages a small sum fixed without regard to the amount of the loss, if any.").

ENI and Goldblatt have not challenged these authorities but have contended factually that any damage resulted not from their actions but from the conduct of the Defendants. The resolution of this issue is not appropriate on this motion and this record. Accordingly, Englander's counterclaim for breach of contract may go forward.

## The Counterclaim for the Breach of the Implied Obligation of Good Faith is Dismissed

New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair

10

dealing when it is based on the same facts as the breach of contract claim. Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002); Ari and Co. v. Regent Int'l Corp., 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003). Courts have dismissed claims for breach of the implied covenant of good faith as "redundant where the conduct allegedly violating the implied covenant is also the predicate for breach . . . of an express provision of the underlying contract." Alter v. Bogorician, No. 97 Civ. 0662 (MBM), 1997 WL 691332, at *7 (S.D.N.Y. Nov. 6, 1997) ("[E]very court faced with a complaint brought under New York law and alleging both breach of contract and breach of the implied covenant of good faith and fair dealing has dismissed the latter claim as duplicative." (citing W.S.A., Inc. v. ACA Corp., Nos. 94-1868, 94-1493 (CSH), 1996 WL 551599, at *9 (S.D.N.Y. Sept. 27, 1996), modified on other grounds, 1996 WL 735508 (Dec. 20, 1996)). Consequently, a claim for breach of the implied covenant of good faith can survive a motion to dismiss "only if it is based on allegations different from those underlying the accompanying breach of contract claim." Siradas v. Chase Lincoln First Bank, N.A., No. 98 Civ. 4028 (RCC), 1999 WL 787658, at *6 (S.D.N.Y. Sept. 30, 1999); cf. EED Holdings v. Palmer Johnson Acquisition Corp., 387 F. Supp. 2d 265, 278-79 (S.D.N.Y. 2004) (noting that "a party who has breached a contract may be charged with separate tort liability for fraud arising from a breach of duty that is distinct from, or in addition to, the breach of contract."). Moreover, where the relief sought in claiming a breach of the implied covenant of good faith is

11

intrinsically tied to the damages allegedly resulting from the breach of contract, there is no separate and distinct wrong that would give rise to an independent claim.    See Alter, 1997 WL 691332, at *8.

In the instant case, Defendants' claim of breach of the implied covenant of good faith rests on Goldblatt's alleged failure to honor the terms of the Agreement.    In support of that claim, Defendants assert that Goldblatt damaged the Defendant by "placing defendant and its attorneys in a position that it became necessary for them to express concerns regarding the validity of a Section 2(f) claim in a public forum," thereby diminishing the value of the Mark.    (FAA ¶ 68, at 26.)  The Defendant has used the same language for both the contract and implied covenant claims.   Because the claims are not only similar, but based on identical allegations, the Defendant's counterclaim for breach of the implied covenant of good faith and fair dealing is dismissed.

## **The Breach Of Contract Counterclaim Against Goldblatt Is Dismissed**

The Agreement states that it is between "Environmental Nutrition, Inc., a New York State corporation" and Englander.  It was executed by Goldblatt in her position as authorized signatory of ENI, and in her individual capacity only as to Sections 7.03 and 7.04(b) and Article IX.  Goldblatt in her individual capacity has no duty to the Defendant under Section 7.13 of the Agreement.

12

Nevertheless, Englander has sought to establish Goldblatt's individual liability for the alleged breach of Section 7.13 by asserting that ENI was an alter ego of Goldblatt and that its corporate veil should be pierced because after the Agreement it became a shell corporation.  (FAA ¶ 19, at 13-14.)

"New York courts are generally reluctant to rely on a claim that a corporation is the alter ego of its principals as a basis for piercing the corporate veil." Alter, 1997 WL 691332, at *12 (citing Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd., 909 F.2d 698, 703 (2d Cir. 1990)).  Under New York law, a party seeking to pierce a corporate veil must make a two-part showing: (i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) (citing Morris v. New York State Dep't of Taxation & Fin., 82 N.Y.2d 135 (N.Y. 1993)).  "Because it is not necessary to allege fraud in order to pierce the corporate veil, plaintiff's alter-ego allegations are judged by the liberal notice pleading standards of Fed. R. Civ. P. 8(a) rather than the more stringent pleading standards of Fed. R. Civ. P. 9(b)." Alter, 1997 WL 691332, at *13; see also Citicorp Int'l Trading Co. v. Western Oil & Refining Co., 771 F. Supp. 600, 608 (S.D.N.Y. 1991).

13

Even under the liberal pleading standards of Rule 8(e), Englander must allege facts sufficient to establish that Goldblatt "misused the corporate form for [her] personal ends so as to commit a wrong or injustice against" Defendant. Morris, 82 N.Y.2d at 143. Because Englander has failed to establish a relationship between the alleged breach of contract and any misuse of the corporate form, the breach of contract counterclaim against Goldblatt individually will be dismissed.

## The Motion for Sanctions is Denied

Plaintiffs have moved for the imposition of sanctions, pursuant to 28 U.S.C. § 1927. That statute provides that any attorney "admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Sanctions under section 1927 can be imposed exclusively against the offending attorneys, not their clients, and "bad faith is the key element in the imposition of § 1927 sanctions . . . ." Wood v. Brosse U.S.A., Inc., 149 F.R.D. 44, 48 (S.D.N.Y. 1993); see also First Interregional Equity Corp. v. Haughton, 1994 U.S. Dist. LEXIS 9477, 1994 WL 364038, at *4 (S.D.N.Y. July 13, 1994) ("Imposition of sanctions under Section 1927 is highly unusual and requires a

14

clear showing of bad faith." (quoting West Virginia v. Chas. Pfizer & Co., 440 F.2d 1079, 1092 (2d Cir. 1971))).

Defendant's conduct does not rise to the level of bad faith necessary to impose sanctions under Section 1927. "Bad faith may be inferred only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999) (quoting Shafii v. British Airways, 83 F.3d 566, 571 (2d Cir. 1996)). Accordingly, the imposition of sanctions under Section 1927 is not warranted and Defendant's motion is denied.

Plaintiffs also have moved for sanctions pursuant to Rule 11, Fed. R. Civ. P. "Claims are considered frivolous for purposes of Rule 11 sanctions if `under an objective standard of reasonableness it is clear . . . that there is no chance of success and no reasonable argument to modify or reverse the law as it stands." Tepper v. Bendell , No. 01 Civ. 6226 (SWK), 2004 WL 2210309, at *4 (S.D.N.Y. Sept. 30, 2004) (quoting Morley v. Ciba-Geigy Corp., 66 F.3d 21, 25 (2d Cir. 1995)). Rule 11 sanctions are a matter of discretion and are "reserved for extreme cases of misconduct." Schweizer v. Mulvehill, 93 F. Supp. 2d 376, 413 (S.D.N.Y. 2000). In ruling on a motion for sanctions, the Court must "resolve all doubts in favor of the signer." Oliveri v. Thompson, 803 F.2d 1265, 1275 (2d Cir. 1986). In this case, it is

15

concluded that grounds warranting Rule 11 sanctions have not been presented and the motion is denied.

## Conclusion

For the reasons stated above, the motions to dismiss the breach of implied duty counterclaim and to dismiss the counterclaims against Goldblatt as an individual are granted. The motion to dismiss the breach of contract counterclaim against ENI is denied, as are the motions for sanctions.

It is so ordered.

New York, NY
January  *18*  , 2007

ROBERT W. SWEET
U.S.D.J.

16